## The Amanda Powell.

*(Circuit Court, D. Maryland.  December 2, 1882.)*

COLLISION NOT PROVED—DISMISSAL OF LIBEL.

    Upon a careful consideration of the evidence *pro* and *con* in this case, it was *held* that the alleged collision was not proved, and that the libel must be dismissed

In Admiralty. Appeal from district court.

*John H. Thomas* and *G. L. Thomas,* for libelants.

*I. A. L. McClure* and *A. Stirling, Jr.,* for tug Amanda Powell.

*R. H. Smith,* for schooner Silver Spray.

BOND, C. J. This is a libel for a collision which took place in the harbor of Baltimore. The facts relating to it, so far as they can be definitely ascertained, appear to be these:

The barge I. I. Munder was lying at the west side of Jackson's wharf, and fastened to it by lines from her bow and stern. Directly opposite her, at another wharf, the bark Nokomis was lying, there being between the bark and the barge a water-way sufficiently wide to permit the schooner Silver Spray to pass, and to lay at the wharf above the bark. The barge was laden with corn. At 5 o'clock in the morning of the nineteenth of September the floating elevator Hattie had removed all the corn which was contained in the bow of the barge, which could be reached through the forward hatch, and left her with her bow elevated and her stern depressed, the weight of her cargo being astern. Between 9 and 10 o'clock of the same morning the steam-tug Amanda Powell undertook to place the Silver Spray at Jackson's wharf. On arriving at the wharf she was halted by the agent of the Northern Central Railroad Company, which apparently controls the wharf, and was told to wait until the agent could see whether the Silver Spray was entitled to a berth there. This having been immediately ascertained affirmatively, the tug, which was lashed to the side of the schooner, proceeded up the dock with her

some 15 feet, and until she had entered the water-way between the barge and the bark Nokomis. There she parted from her, there not being room for both of them to pass, and the schooner was hauled up to her place by lines from the wharf about her windlass. It took about half an hour to pull her past the barge, which itself had to be removed from its moorings lower down the dock to give the schooner berth-room at the head of the dock. Shortly after the barge was found to be sinking, and upon subsequent examination it was discovered she had a hole in her starboard side, which was that next the wharf, about eight inches long and three inches wide.

The libelants allege that the injury to the barge and cargo was owing to the collision of the schooner with her, while in charge of the tug, as she was endeavoring to pass between the bark and the barge. The respondents deny that there was any such collision, and affirm that the sinking of the barge after the schooner had passed was *post hoc* and not *propter hoc*.

The evidence, as in most cases of collision, is in direct conflict. Three witnesses for the libelants, who were on the bark, say they not only saw the collision but heard a crash at the time which could have been heard 60 feet; while the agent of the railroad states that he watched the whole process, and that there was no collision, and that he heard no noise whatever, though he was on the wharf and was separated from the schooner, as she passed, by the width of the barge. Yet another witness states that he was on the barge during the passage of the schooner watching the movement, and there was no collision and no rolling or motion on the part of the barge. Of course, the crew of the schooner and the tug deny that the schooner collided with the barge, which apparently had no crew,—at least none on board, the captain of it being a block or two away at a drinking-house. I have not recited all the testimony *pro* and *con* respecting the fact of collision or no collision. Suffice it to say that it is equally contradictory. Under this state of the evidence, to say the least, it is difficult to determine what the facts are, from the parol testimony. The libelants are required to make out their case by a preponderance of testimony before they can recover.

I have carefully thought over all of the testimony, and cannot bring my mind to the conclusion that there was any collision at the time at all. The witnesses who were on the bark say so, but their description of the process by which the tug undertook to put the schooner in the dock upon her arrival is clearly untrue. They make a mistake as to which side of the schooner the tug was on, and are wrong in their statement as to the manner she turned the schooner's bow around. The noise they describe is altogether too great for the

alleged occasion of it, and had the collision occurred in the way they state, and with the force they say it did, there would have been some trace of the blow upon the starboard side of the schooner and upon the port side of the barge. But there was no trace of any blow to be found, the damage to the barge being upon the side of it next to the wharf—her starboard side. Moreover, it seems to me that had the tug swung the schooner's bow around against the barge as these witnesses describe it, when her anchor was hanging from her cat-heads in the water, there would have been some mark or rupture made by it, either upon the barge or schooner, or upon both.

All the facts of the case seem to show that no reliance can be placed upon the testimony of these witnesses.

It appears to me, likewise, that had the collision occurred as the libelants' witnesses stated it did, the character of the injury to the barge would have been different. It would have been, not a hole eight inches long and three or four wide, but a crushing of her planking, extending over a considerable space. Nevertheless, shortly after the schooner was docked the barge began to sink. It is impossible to tell, and it is no part of our duty to ascertain, when it received its injury. The carelessness of her captain, who apparently leaves her to take care of herself, to be moved around by every one who finds her in the way, would allow such an injury to be given without knowledge of it at the time. It is quite likely that this hole in her had been made either by the elevator, or even before the elevator reached her, and when the corn was removed from her bow the depression of her stern submerged the orifice, and, making water slowly, she began to sink.

Whether this was so or not, I am of the opinion that the great preponderance of the evidence is that there was no damage done her by these respondents.

The libel will be dismissed.